UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FORTRESS VALUE RECOVERY FUND I LLC,<br><br>         Plaintiff,<br><br>    -against-<br><br>COLUMBUS COMPONENTS GROUP, LLC, CCG HOLDINGS, LLC, PJ MANAGEMENT GROUP, LLC, HAWTHORN MANUFACTURING CORPORATION, and PATRICK JAMES,<br><br>         Defendants. | Case No. 1:11-CV-00200<br><br>Hon. James S. Gwin |

**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN
<u>OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS</u>**

                  CHADBOURNE & PARKE LLP
                  30 Rockefeller Plaza
                  New York, NY  10112
                  (212) 408-5100
                  (212) 541-5369

                  *Attorneys for Plaintiff*
                  Fortress Value Recovery Fund I LLC

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES AND ARGUMENTS ................................................................. 5

STATEMENT OF FACTS ...................................................................................................... 6

      A.    Brantley Entered Into The Note Purchase Agreement And Related Guaranties With CCG, CCG Holdings, And PJM, And Plaintiff Assumed Brantley's Rights And Interests Under Those Agreements .............................................................................. 6

      B.    CCG, CCG Holdings, And PJM Defaulted On Their Obligations Under The CCG Agreements .......................................................... 7

      C.    James And Hawthorn Are Alter Egos Of CCG, CCG Holdings, And PJM ............................................................................................ 7

      D.    James' And Hawthorn's Conduct Is Part Of An Established Pattern In Which They Abuse The Corporate Form In Order To Defraud Creditors .............................................................................................. 8

ARGUMENT ............................................................................................................................ 9

I.  PLAINTIFF HAS ADEQUATELY PLED ITS STANDING TO ASSERT CLAIMS AGAINST DEFENDANTS AS THE SUCCESSOR TO BRANTLEY'S RIGHTS UNDER THE CCG AGREEMENTS ...................................... 10

II.  PLAINTIFF HAS ADEQUATELY PLED THAT JAMES AND HAWTHORN ARE THE ALTER EGOS OF CCG, CCG HOLDINGS, AND PJM ............................................................................................................................... 12

      A.    James And Hawthorn Exercised Complete Control Over CCG, CCG Holdings, And PJM, Such That Those Entities Had No Separate Mind, Will, Or Existence Of Their Own ................................... 13

      B.    James And Hawthorn Utilized CCG, CCG Holdings, And PJM To Commit Fraud And Other Unlawful Acts ................................................ 16

III.  PLAINTIFF HAS ADEQUATELY PLED ITS UNJUST ENRICHMENT CLAIMS AGAINST JAMES AND HAWTHORN .......................................................... 19

CONCLUSION ....................................................................................................................... 20

**TABLE OF AUTHORITIES**

**CASES**                                                                                              **PAGE(S)**

Bassett v. NCAA, 528 F.3d 426 (6th Cir. 2008)..........................................................................9

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).......................................................9, 10, 15

Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.,
    617 N.E.2d 1075 (Ohio 1993)...........................................................................................12, 13

Brennan v. Slone (In re Fisher), 296 F. App'x 494 (6th Cir. 2008) ................................................16

Bucyrus-Erie Co. v. Gen. Prods. Corp., 643 F.2d 413 (6th Cir. 1981)...........................................16

Clinical Components v. Leffler Indus.,
    1997 Ohio App. LEXIS 199 (Ohio Ct. App. Jan. 22, 1997)....................................................16

Deutsche Bank Nat'l Trust, Co. v. Key,
    2007 U.S. Dist. LEXIS 94975 (N.D. Ohio Dec. 12, 2007)................................................. 11-12

Dombroski v. Wellpoint, Inc., 895 N.E.2d 538 (Ohio 2008) ...................................... 12-13, 17, 18

Erickson v. Pardus, 551 U.S. 89 (2007)..................................................................................... 9-10

Estate of Thomson v. Toyota Motor Corp. Worldwide,
    545 F.3d 357 (6th Cir. 2008) ..................................................................................................14

FDIC v. Jeff Miller Stables, 573 F.3d 289 (6th Cir. 2009)..............................................................19

Fednav, Ltd. v. Chester, 547 F.3d 607 (6th Cir. 2008) ...................................................................11

Ferron v. Metareward, Inc., 698 F. Supp. 2d 992 (S.D. Ohio 2010) ..............................................15

Flagstar Bank, FSB v. Sellers,
    2010 Ohio App. LEXIS 3343 (Ohio Ct. App. Aug. 23, 2010) ................................................17

Hitachi Med. Sys. Am., Inc. v. Branch,
    2010 U.S. Dist. LEXIS 19405 (N.D. Ohio Mar. 4, 2010) .......................................................18

Hurst v. Hantke, 2011 U.S. App. LEXIS 2542 (7th Cir. Feb. 10, 2011).........................................10

In re Foreclosure Actions, 2007 U.S. Dist. LEXIS 97763 (N.D. Ohio Nov. 14, 2007) ................11

Jones v. Bock, 549 U.S. 199 (2007) ...............................................................................................11

LeRoux's Billyle Supper Club v. Ma, 602 N.E.2d 685 (Ohio Ct. App. 1991)...............................13

RCO Int'l Corp. v. Clevenger, 904 N.E.2d 941 (Ohio Ct. App. 2008) .........................................17

Ruffing v. Masterbuilt Tool & Die, LLC,
    2009 U.S. Dist. LEXIS 4754 (N.D. Ohio Jan. 23, 2009)..............................................17, 18, 19

Stewart v. R.A. Eberts Co., 2009 Ohio App. LEXIS 3762 (Ohio Ct. App. Aug. 18, 2009) .........18

Taylor Steel, Inc. v. Keeton, 417 F.3d 598 (6th Cir. 2005) ................................................12, 13, 14

Tristate Capital Bank v. Red Rock Stamping, LLC, No. 09-cv-01455 (N.D. Ohio).......................9

Van-Am. Ins. Co. v. Schiappa, 191 F.R.D. 537 (S.D. Ohio 2000).................................................18

Wachovia Bank, N.A. v. Zomax, Inc.,
    2009 U.S. Dist. LEXIS 102735 (S.D. Ohio Nov. 3, 2009).......................................................15

White v. United States, 601 F.3d 545 (6th Cir. 2010) ...................................................................11

William F. Shea, LLC v. Bonutti Research, Inc.,
    2011 U.S. Dist. LEXIS 1752 (S.D. Ohio Jan. 7, 2011) ............................................................16

**STATUTES**

Ohio Rev. Code Ann. § 1336.04....................................................................................................18

**OTHER AUTHORITIES**

FRCP 8.................................................................................................................................. 9-10, 12

FRCP 9..........................................................................................................................................18

FRCP 12........................................................................................................................................6, 9

General Order No. 2006-16 ....................................................................................................11, 12

Plaintiff Fortress Value Recovery Fund I LLC ("Plaintiff") respectfully submits this omnibus memorandum of law in opposition to the motion to dismiss of (i) defendants Hawthorn Manufacturing Corporation ("Hawthorn") and Patrick James ("James"), and (ii) defendants Columbus Components Group, LLC ("CCG"), CCG Holdings, LLC ("CCG Holdings"), and PJ Management Group, LLC ("PJM") (collectively, "Defendants").

## STATEMENT OF ISSUES AND ARGUMENTS

Defendants' motions to dismiss the Complaint are based on their erroneous contentions that Plaintiff must plead evidence, rather than facts. Defendants' motions should be denied because the Federal Rules of Civil Procedure do not impose any such obligation, and the Complaint has asserted viable causes of action against all Defendants under Ohio law.

Plaintiff brings this action to recover $12,460,333.34 in damages resulting from CCG's breach of its loan agreement with Plaintiff, and PJM's and CCG Holdings' breaches of their unconditional guarantees of CCG's debt. Plaintiff has asserted claims against James and Hawthorn because they are the alter egos of, and are liable for the debts of, CCG, CCG Holdings, and PJM.

Contrary to Defendants' argument, Plaintiff has standing to bring this action, and was not obligated to attach to the Complaint copies of the documents demonstrating that it assumed its predecessor's rights and interests in the agreements at issue. Under the notice pleading requirements of the Federal Rules of Civil Procedure, it is more than sufficient for the Complaint to assert facts establishing Plaintiff's acquisition of such rights.

Similarly, Plaintiff's claims against James and Hawthorn have been adequately pled in that the Complaint alleges numerous specific facts demonstrating their extensive control over the undercapitalized and hopelessly intertwined entities, CCG, CCG Holdings, and PJM. Moreover,

5

the Complaint explicitly describes how James and Hawthorn used those entities to fraudulently transfer management fees from CCG to unjustly enrich themselves.[1]

## STATEMENT OF FACTS

### A. Brantley Entered Into The Note Purchase Agreement And Related Guaranties With CCG, CCG Holdings, And PJM, And Plaintiff Assumed Brantley's Rights And Interests Under Those Agreements

On or about December 9, 2004, Brantley Mezzanine Finance, LLC ("Brantley") and CCG executed a note purchase agreement (as subsequently amended, the "Note Purchase Agreement"), pursuant to which Brantley loaned CCG $6 million. (Compl. ¶ 1; id. at Ex. A.) CCG Holdings and PJM each entered into a separate guaranty agreement with Brantley on that same date (the "CCG Holdings Guaranty" and the "PJM Guaranty," and together with the Note Purchase Agreement, the "CCG Agreements"). (Id. ¶ 20; id. at Exs. B and C.) CCG Holdings is the record and beneficial owner of all of the outstanding member interests of CCG, and PJM purported to provide management services to CCG in exchange for a monthly fee. (Id. ¶ 18.) PJM and CCG Holdings derived substantial benefit and advantage from the Note Purchase Agreement. (Id. ¶ 19.)

Plaintiff was known as D.B. Zwirn Special Opportunities Fund, L.P. until it converted to a limited liability company and changed its name to Fortress Value Recovery Fund I LLC in 2009. (Id. ¶ 3.) On September 17, 2004, Plaintiff extended a loan to Brantley pursuant to a Senior Finance Agreement. (Id. ¶ 12.) In or around early 2007, Brantley defaulted on that loan

---

[1] None of the Defendants has filed an answer within the time prescribed by FRCP 12(a)(1), as required by Section V.B. of this Court's February 23, 2011 Case Management Conference Scheduling Order.

6

and, in April of that year, Plaintiff exercised its right under the Senior Finance Agreement to assume all of Brantley's right, title, and interest in the CCG Agreements. (Id.)

**B.     CCG, CCG Holdings, And PJM Defaulted On Their Obligations Under The CCG Agreements**

In or around February 2009, CCG ceased making its required monthly interest payments to Plaintiff, thereby defaulting on its payment obligations under the Note Purchase Agreement. (Id. ¶ 14.) Plaintiff notified CCG of this payment default in a letter dated April 1, 2009. (Id.) CCG failed to cure its payment defaults in the following months and, on August 13, 2009, Plaintiff exercised its right under the Note Purchase Agreement to declare all obligations under that agreement immediately due and payable, including CCG's obligation to repay the principal amount of the loan in full. (Id.) As of the date the Complaint was filed, CCG owed Plaintiff principal, interest, and contractually mandated fees under the Note Purchase Agreement in a total amount of $12,460,333.34. (Id. ¶¶ 15-17.) Neither CCG Holdings nor PJM has ever made any payment to Plaintiff in connection with their guarantees. (Id. ¶ 21.)

**C.     James And Hawthorn Are Alter Egos Of CCG, CCG Holdings, And PJM**

James is the sole or controlling owner (directly or indirectly) of CCG, CCG Holdings, PJM, and Hawthorn. (Id. ¶ 22.) James and Hawthorn (under James' control) exercised complete control over the daily operations of CCG, CCG Holdings, and PJM, such that that they were nothing more than a mere façade for James. (See id. ¶¶ 23, 30-35.) James and Hawthorn were able to assert this control due to James' majority ownership interest in CCG, CCG Holdings, PJM, and Hawthorn, and through James' service as Chairman of each of those entities. (Id. ¶ 24.)

The supposed distinctions between Defendants were wholly illusory.  (Id. ¶¶ 23, 25.)  For example, CCG, CCG Holdings, PJM, and Hawthorn shared management and employees, as demonstrated by the facts that:

- Jay Schabel ("Schabel") served as the President of both CCG and PJM, and as the Chief Executive Officer of Hawthorn (id. ¶ 25);

- Charles Schiavello ("Schiavello") performed management services on behalf of CCG and other entities owned by James (id.); and

- Jeffery Lynn ("Lynn") and Richard Adante ("Adante"), Plaintiff's primary contacts at CCG, CCG Holdings, and PJM, also represented that they were employees of Hawthorn.  (Id. ¶ 32.)

Moreover, Hawthorn, CCG Holdings, and PJM shared the same office at 30505 Bainbridge Road, Suite 100, Solon, OH 44139.  (Id. ¶ 26.)  CCG, CCG Holdings, PJM, and Hawthorn failed to observe corporate formalities, such as the maintenance of separate books and records, and CCG, CCG Holdings, and PJM suffered from grossly inadequate capitalization, as evidenced by their failure to satisfy their payment obligations to Plaintiff.  (Id. ¶¶ 27-28.)

James and Hawthorn caused CCG to make false representations of its financial condition to Plaintiff.  (Id. ¶¶ 30, 32.)  James and Hawthorn intended for those misrepresentations to delay and/or prevent the occurrence of an event of default under the Note Purchase Agreement, because such an event would terminate CCG's right to continue paying management fees to PJM and Hawthorn.  (Id. ¶ 31.)  PJM, Hawthorn, and James subsequently used the management fees they received from CCG for their own purposes, rather than for any purpose relating to the business of CCG.  (Id.)

**D.     James' And Hawthorn's Conduct Is Part Of An Established Pattern
         In Which They Abuse The Corporate Form In Order To Defraud Creditors**

James' and Hawthorn's conduct is part of a pattern of deception in which they utilize the entities they control in order to defraud creditors.  (Id. ¶ 34.)  In fact, James and Hawthorn have

8

undertaken similar conduct that has resulted in the closure of at least ten manufacturing plants in the last twelve years. (Id. ¶ 35.) In each instance, James and/or Hawthorn received substantial management fees and/or salary until those businesses closed. (Id.)

For example, Tristate Capital Bank, a creditor of Red Rock Stamping, LLC ("Red Rock") -- another corporation owned and controlled by James and Hawthorn -- brought an action in this Court based on allegations that Hawthorn and James fraudulently misrepresented the solvency of Red Rock so that Red Rock could continue paying management fees to Hawthorn and PJM. See Tristate Capital Bank v. Red Rock Stamping, LLC, No. 09-cv-01455 (N.D. Ohio) (See Exhibit A to the Balber Decl.); (Compl. ¶ 34.)[2] This action was ultimately resolved when James, the alleged alter ego of Red Rock and Hawthorn (and a non-party to the contract between the plaintiff and Red Rock), agreed to pay the plaintiff $1 million. (See Balber Decl. Ex. B (transcript of settlement).)

## ARGUMENT

In reviewing a motion to dismiss under FRCP 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008) (citations and quotations omitted). To survive a motion to dismiss, a plaintiff is required to plead only "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of the claim]." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). FRCP 8(a)(2) "requires only a short and plain statement of the claim showing that the

---

[2] "Balber Decl." refers to the Declaration of Scott S. Balber dated March 11, 2011.

9

pleader is entitled to relief [in order to] give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotations omitted) (quoting Twombly, 550 U.S. at 555).

I. **PLAINTIFF HAS ADEQUATELY PLED ITS STANDING TO ASSERT CLAIMS AGAINST DEFENDANTS AS THE SUCCESSOR TO BRANTLEY'S RIGHTS UNDER THE CCG AGREEMENTS**

Defendants argue that Plaintiff lacks standing to assert its claims because it has not "***proved*** [its] ownership interest" in the debts at issue (CCG Mem. at 3 (emphasis added)), and "has asserted no factual support for its alleged right 'to assume all of Brantley's right, title and interest'" to the CCG Agreements. (James Mem. at 6-7.)[3] However, Plaintiff need not "prove" its allegations in its Complaint, rather it is sufficient for Plaintiff to plead facts (not proffer evidence) establishing its right to assume Brantley's interests under the CCG Agreements. See, e.g., FRCP 8(a); Hurst v. Hantke, 2011 U.S. App. LEXIS 2542, at *2 (7th Cir. Feb. 10, 2011) (acknowledging that "the Federal Rules of Civil Procedure [do not] require a plaintiff to attach evidence to his complaint"). Plaintiff has pled facts sufficient to establish its standing here, as the Complaint plainly alleges that (i) Plaintiff extended a loan to Brantley pursuant to a Senior Finance Agreement, and (ii) Plaintiff assumed all of Brantley's rights under the CCG

---

[3] "James Mem." refers to the Memorandum in Support of Motion to Dismiss of Defendants Hawthorn Manufacturing Corporation and Patrick James, dated February 23, 2011. "CCG Mem." refers to the Memorandum in Support of Motion to Dismiss of Defendants Columbus Components Group, LLC, CCG Holdings, LLC, and PJ Management Group, LLC, dated February 23, 2011.

Agreements after Brantley defaulted under the Senior Finance Agreement in early 2007. (Compl. ¶ 12; Statement of Facts, § A, supra.)[4]

Defendants' related contention that Plaintiff's failure to "attach[] a copy of the Senior Finance Agreement to the Complaint" warrants dismissal for lack of standing (CCG Mem. at 2) is similarly baseless. Courts will only mandate the attachment of evidence to a complaint when a rule or regulation requires a plaintiff to do so. See Jones v. Bock, 549 U.S. 199, 224 (2007) ("[A]dopting different and more onerous pleading rules to deal with particular categories of cases should be done through established rulemaking procedures, and not on a case-by-case basis by the courts"). Because no statute, rule, or regulation requires Plaintiff's attachment of the Senior Finance Agreement as an exhibit to the Complaint, this action cannot be dismissed on that basis.

Defendants rely exclusively on cases applying the pleading standard for federal foreclosure actions under Section I of the United States District Court for the Northern District of Ohio's Fifth Amended General Order No. 2006-16 (October 10, 2007) ("General Order No. 2006-16"). (CCG Mem. at 3-4.) General Order No. 2006-16 requires a plaintiff *in a foreclosure action* to attach documentation to its complaint demonstrating that it is the owner of the mortgage on which it seeks to foreclose. See, e.g., In re Foreclosure Actions, 2007 U.S. Dist. LEXIS 97763, at *1-2 (N.D. Ohio Nov. 14, 2007); Deutsche Bank Nat'l Trust, Co. v. Key, 2007

---

[4]  When standing is challenged at the pleading stage, the court must "must accept as true all material [factual] allegations of the complaint." See White v. United States, 601 F.3d 545, 551 (6th Cir. 2010) (quoting Fednav, Ltd. v. Chester, 547 F.3d 607, 614 (6th Cir. 2008)) (internal quotations omitted) (amendment in original).

11

U.S. Dist. LEXIS 94975, at *3-4 (N.D. Ohio Dec. 12, 2007).[5] Because this is not a foreclosure action, General Order No. 2006-16 and the case law cited by Defendants have no application here.

For avoidance of doubt, the documentation evidencing Plaintiff's assumption of Brantley's right, title, and interest in the CCG Agreement Note Purchase Agreement -- including the Senior Finance Agreement -- is submitted herewith. (See Balber Decl. Exs. C-D.) Plaintiff has thus pled allegations sufficient to establish its standing to bring this action.[6]

## II. PLAINTIFF HAS ADEQUATELY PLED THAT JAMES AND HAWTHORN ARE THE ALTER EGOS OF CCG, CCG HOLDINGS, AND PJM

"[T]he corporate form is a legal fiction created for convenience that may be disregarded when the purpose for which it was intended is abused." Taylor Steel, Inc. v. Keeton, 417 F.3d 598, 606 (6th Cir. 2005) (citing Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos., 617 N.E.2d 1075, 1085 (Ohio 1993)). Under Ohio law, the corporate form may be disregarded and an individual shareholder held liable for the corporation's wrongs when:

> "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud, [an illegal act, or a similarly unlawful act] against the person

---

[5] The policy rationales underlying General Order No. 2006-16 are inapplicable here. Brantley's interest in the CCG Agreements was transferred in only one instance, and Defendants were plainly aware of such transfer, because CCG made monthly payments to Plaintiff under the Note Purchase Agreement for more than eighteen months after Plaintiff assumed Brantley's rights. (See Compl. ¶¶ 12, 14.)

[6] James and Hawthorn also argue that Plaintiff lacks standing because it attached the operative Note Purchase Agreement, rather than the original note purchase agreement, as an exhibit to the Complaint. (CCG Mem. at 4.) This contention is frivolous for the reasons set forth above.

> seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."

Dombroski v. Wellpoint, Inc., 895 N.E.2d 538, 543 (Ohio 2008) (modifying Belvedere, 617 N.E.2d at 1086).

James' and Hawthorn's assertion that the Complaint fails to allege any facts demonstrating their liability to Plaintiff (James Mem. at 11) is entirely without merit. Rather, Plaintiff has sufficiently pled each element necessary to state a claim for James' and Hawthorn's alter ego liability, such that Plaintiff may proceed in this action and hold James and Hawthorn accountable for their fraudulent scheme.[7]

### A. James And Hawthorn Exercised Complete Control Over CCG, CCG Holdings, And PJM, Such That Those Entities Had No Separate Mind, Will, Or Existence Of Their Own

Ohio courts generally consider several factors when determining whether a company is under such complete control of an individual that they become his alter egos, including:

> "(1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere façade for the operations of the dominant shareholder(s)."

See Taylor Steel, 417 F.3d at 605 (quoting LeRoux's Billyle Supper Club v. Ma, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991)). The Sixth Circuit has also recognized that courts should consider several additional factors, such as whether the alleged alter egos:

---

[7] James and Hawthorn do not dispute that Plaintiff has adequately pled injury as a result of their actions and, as such, only the first two elements of Plaintiff's alter ego claims are discussed herein.

13

> "(1) shar[e] the same employees and corporate officers; (2) engag[e] in the same business enterprise; (3) hav[e] the same address and phone lines; (4) us[e] the same assets; (5) complet[e] the same jobs; (6) [fail to] maintain[] separate books, tax returns and financial statements; and (7) exert[] control over the daily affairs of another corporation."

Estate of Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362-63 (6th Cir. 2008). The above-referenced factors are not an exhaustive list of relevant considerations, and no single factor is a prerequisite to a finding of alter ego liability. See Taylor Steel, 417 F.3d at 605.

The Complaint alleges substantial facts demonstrating that Defendants exhibit many of these factors, including the allegations that:

- Because James owned Hawthorn, CCG, CCG Holdings, and PJM, and served as the Chairman of each of those entities, James and Hawthorn (acting under James' control) were able to (and did) exercise complete control over the daily affairs of CCG, CCG Holdings, and PJM (Compl. ¶¶ 22, 24; Statement of Facts, § C, supra);

- CCG, CCG Holdings, PJM, and Hawthorn have numerous overlapping employees and corporate officers including James, Schabel, Schiavello, Lynn, and Adante (Compl. ¶¶ 25, 32; Statement of Facts, § C, supra);

- CCG Holdings, PJM, and Hawthorn share the same office suite in Solon, Ohio (Compl. ¶ 26; Statement of Facts, § C, supra);[8]

- CCG, CCG Holdings, PJM, and Hawthorn have failed to observe corporate formalities, such as the maintenance of separate books and records (Compl. ¶ 27);

- CCG, CCG Holdings, and PJM suffered from grossly inadequate capitalization prior to 2009, as evidenced by their failure to satisfy their payment obligations to Plaintiff (id. ¶ 28);

---

[8] Defendants' contention that Plaintiff somehow "undercut" this allegation by pleading that James does not reside at this same address (James Mem. at 14) is absurd. In light of the Complaint's allegations of James' pervasive frauds involving numerous business entities (see Statement of Facts, §§ C-D, supra), it is hardly surprising that James resides in a $1.8 million home, rather than the single office suite from which he operates CCG Holdings, PJM, and Hawthorn. (See Compl. ¶¶ 5-8, 26.)

14

- CCG, CCG Holdings, and PJM were mere façades for the operations of James and Hawthorn (id. ¶ 23; Statement of Facts, § C, supra); and

- James and Hawthorn utilized CCG's assets (in the form of monthly management fees) and diverted them for their own use. (Compl. ¶ 31; Statement of Facts, § C, supra.)[9]

Such allegations are more than sufficient to establish that James and Hawthorn are the alter egos of CCG, CCG Holdings, and PJM. See, e.g., Wachovia Bank, N.A. v. Zomax, Inc., 2009 U.S. Dist. LEXIS 102735, at *17 (S.D. Ohio Nov. 3, 2009) (denying motion to dismiss where the complaint maintained that the defendant was "the owner of both [of his alleged alter egos], and exercise[d] control over both entities") (citing Twombly, 550 U.S. at 555).

James and Hawthorn attempt to distract from the ample allegations demonstrating their control over CCG, CCG Holdings, and PJM, by making arguments that are contrary to the relevant pleading standard and Ohio law. For example, James and Hawthorn claim that Plaintiff must submit "evidence" in support of its factual allegations regarding the management and corporate records of CCG, CCG Holdings, PJM, and Hawthorn. (James Mem. at 12, 13 (arguing that "none of [Plaintiff's] factual allegations are supported by information in the Complaint," such as the exhibits attached thereto).) However, this contention is unavailing for the same reasons that require the rejection of Defendants' argument that Plaintiff has failed to adequately plead standing -- i.e., that a Plaintiff is not required to proffer "evidence" at the pleading stage. See Ferron v. Metareward, Inc., 698 F. Supp. 2d 992, 996-97 (S.D. Ohio 2010).

James' and Hawthorn's assertion that "the conduct alleged is completely authorized by Ohio corporation law" (James Mem. at 14) is similarly baseless. The Ohio corporation law cited

---

[9] Plaintiff has also established that James has previously assumed the debts for another of his alter ego companies, Red Rock. (Compl. ¶ 34; Statement of Facts, § D, supra.)

15

by James and Hawthorn merely stands for the unremarkable proposition that corporations may share officers and offices, and that the allegation of that fact *alone* is an insufficient basis to sustain claims of alter ego liability in those cases.  See William F. Shea, LLC v. Bonutti Research, Inc., 2011 U.S. Dist. LEXIS 1752, at *22-23 (S.D. Ohio Jan. 7, 2011) (allegations of common address and officers are "insufficient" standing alone to establish alter ego liability where the plaintiffs "make no argument [such as that the corporation] is inadequately capitalized, disregards corporate formalities, or fails to keep corporate records"); Clinical Components v. Leffler Indus., 1997 Ohio App. LEXIS 199, at *8-9 (Ohio Ct. App. Jan. 22, 1997).

James and Hawthorn also assert, without citing any authority, that Plaintiff has not adequately alleged the undercapitalization of CCG, CCG Holdings, and PJM, because "[b]eing undercapitalized refers to funds of the corporation at its formation."  (James Mem. at 13.) However, it is well-established that courts must assess allegations of inadequate capitalization during the relevant period at issue.  See, e.g., Brennan v. Slone (In re Fisher), 296 F. App'x 494, 506 (6th Cir. 2008) (affirming alter ego liability based on testimony that the sole shareholder "literally bled the corporation of capital *prior to its demise*," more than six years after its formation) (emphasis added); Bucyrus-Erie Co. v. Gen. Prods. Corp., 643 F.2d 413, 418 (6th Cir. 1981) (upholding alter ego liability jury instruction to "consider whether the corporation was adequately financed, *originally or subsequently*, for the business in which it was engaged") (emphasis added).  Accordingly, Plaintiff has sufficiently pled facts demonstrating that CCG, CCG Holdings, and PJM effectively lacked any mind, will, or existence of their own.

**B.     James And Hawthorn Utilized CCG, CCG Holdings, And PJM To Commit Fraud And Other Unlawful Acts**

James and Hawthorn also argue that they cannot be held liable for Plaintiff's claims because Plaintiff has neither stated a cause of action for fraud nor pled fraud with particularity.

16

(James Mem. at 15-17.) These contentions misstate both the applicable law and the allegations of the Complaint. Contrary to James' and Hawthorn's assertion, Plaintiff is not required to "assert a fraud cause of action in its Complaint" (James Mem. at 16) in order to impose alter ego liability. Rather, under Ohio law, Plaintiff can assert claims against James and Hawthorn by "demonstrating" fraud, an illegal act, or a similarly unlawful act in its pleadings. See RCO Int'l Corp. v. Clevenger, 904 N.E.2d 941, 944 (Ohio Ct. App. 2008) (holding that "demonstrating (as opposed to pleading) fraud is one way to meet the second prong of the [alter ego liability] test"); Dombroski, 895 N.E.2d at 545 ("the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act"); see also Ruffing v. Masterbuilt Tool & Die, LLC, 2009 U.S. Dist. LEXIS 4754, at *51 (N.D. Ohio Jan. 23, 2009) (plaintiff's allegations of fraud satisfied the second prong of the alter ego test, notwithstanding the absence of an actual claim of fraud in the four-count complaint).[10]

Furthermore, allegations of fraud are not a prerequisite for establishing alter ego liability. Rather, Plaintiff must only demonstrate that James and Hawthorn committed "an illegal act, or a similarly unlawful act." Dombroski, 895 N.E.2d at 545; Flagstar Bank, FSB v. Sellers, 2010 Ohio App. LEXIS 3343, at *6-7 (Ohio Ct. App. Aug. 23, 2010). Here, Plaintiff has alleged facts demonstrating that James and Hawthorn have violated the Ohio Fraudulent Transfer Act by directing and receiving transfers of assets from CCG, CCG Holdings, and/or PJM, without

---

[10] Significantly, Hawthorn was one of the defendants in Ruffing and was represented by the same counsel as in this case. See Ruffing, 2009 U.S. Dist. LEXIS 4754, at *51 (denying a motion to dismiss because the complaint asserted allegations sufficient to support a finding that Hawthorn was the alter ego of a defendant that had breached its contract with plaintiff).

returning to the companies equivalent value, while those companies were grossly undercapitalized.[11] (Compl. ¶¶ 31, 66); see also Hitachi Med. Sys. Am., Inc. v. Branch, 2010 U.S. Dist. LEXIS 19405, at *20-21 (N.D. Ohio Mar. 4, 2010) (holding that a "violation of the Fraudulent Transfer Act suffices as conduct 'in such a manner as to commit fraud, an illegal act, or a similarly unlawful act'") (citing Dombroski, 895 N.E.2d at 545). Unlike claims for common-law fraud, there is no requirement that such fraudulent transfer claims be pled with particularity. Van-Am. Ins. Co. v. Schiappa, 191 F.R.D. 537, 542 (S.D. Ohio 2000) (holding that FRCP 9(b) particularity not required for fraudulent transfer allegations based upon transfer without receiving equivalent value while undercapitalized); Stewart v. R.A. Eberts Co., 2009 Ohio App. LEXIS 3762, at *19 (Ohio Ct. App. Aug. 18, 2009) (citation omitted).

Moreover, the Complaint satisfies FRCP 9(b)'s heightened pleading requirements for allegations of fraud.[12] The Complaint alleges that James and Hawthorn employed a scheme in which they utilized CCG, CCG Holdings, and PJM to defraud the creditors of those entities. (See Compl. ¶¶ 29-32, 34-35.) In particular, in the months preceding CCG's February 2009 default under the Note Purchase Agreement, James and Hawthorn caused CCG to fraudulently

---

[11] Pursuant to the Ohio Uniform Fraudulent Transfer Act, a fraudulent transfer occurs when the debtor made a transfer without receiving equivalent value and (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. See Ohio Rev. Code Ann. § 1336.04(A).

[12] To adequately plead a claim of fraud, a plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Ruffing, 2009 U.S. Dist. LEXIS 4754, at *46 (quotations and citations omitted).

18

misrepresent its finances and liabilities to Plaintiff to prevent or delay CCG's default. (Id. ¶¶ 14, 29-32.) In so doing, James and Hawthorn facilitated CCG's diversion of tens of thousands of dollars to Hawthorn and PJM for James' and Hawthorn's benefit, and away from Plaintiff, to whom Defendants were indebted. (Id.) Plaintiff suffered injury as a result. (Id. ¶¶ 35-36.) Such allegations are sufficiently particular to state a fraud claim. See Ruffing, 2009 U.S. Dist. LEXIS 4754, at *51. Accordingly, Plaintiff has adequately pled that James and Hawthorn exerted control over CCG, CCG Holdings, and PJM in a manner to commit fraud or an unlawful act.[13]

### III. PLAINTIFF HAS ADEQUATELY PLED ITS UNJUST ENRICHMENT CLAIMS AGAINST JAMES AND HAWTHORN

To plead a claim for unjust enrichment under Ohio law, a plaintiff must allege (1) that it conferred a benefit upon the defendant, (2) that the defendant had knowledge of the benefit, and (3) that retention of the benefit by the defendant would be unjust without payment. FDIC v. Jeff Miller Stables, 573 F.3d 289, 294-95 (6th Cir. 2009). James and Hawthorn argue that they were not unjustly enriched by Plaintiff's $6 million loan to CCG because they are not alter egos of CCG, CCG Holdings, and PJM (James Mem. at 17-18), but as stated above, Plaintiff has sufficiently alleged its alter ego allegations. (See Statement of Facts, § C, supra; Argument § II.A, supra.) The Complaint also clearly alleges how Plaintiff's $6 million loan to CCG enabled James and Hawthorn to fraudulently obtain tens of thousands of dollars in management fees and salary from CCG, and that allowing them to keep those monies would be inequitable. (See Statement of Facts, § C, supra.) Further, the Complaint makes clear that James had direct

---

[13] Because Plaintiff has pled that James and Hawthorn are the alter egos of CCG, CCG Holdings, and PJM, there is no merit to the contention that James and Hawthorn cannot be held individually liable for Plaintiff's claims. (See James Mem. at 17.)

19

knowledge of CCG's obligation to repay the loan as the signatory to both the CCG Holdings and PJM Guaranties.  (See Compl. ¶¶18-21; id. at Exs. B and C.)

## CONCLUSION

For the foregoing reasons, Plaintiff Fortress Value Recovery Fund I LLC respectfully requests that the Court deny Defendants' Motions to Dismiss in their entireties.

Dated: New York, New York
March 11, 2011

        CHADBOURNE & PARKE LLP

        By    /s/ Scott S. Balber
            Scott S. Balber
            A Member of the Firm
        Attorneys for Plaintiff
        30 Rockefeller Plaza
        New York, NY  10112
        Tel. (212) 408-5100
        Fax (212) 541-5369
        sbalber@chadbourne.com

## CERTIFICATE OF SERVICE

The foregoing has been served on all parties via the Court's electronic filing system on this 11th day of March, 2011.

        /s/ Scott S. Balber
        Scott S. Balber

## CERTIFICATE OF COMPLIANCE

I, Scott S. Balber, do hereby depose and state that the Court has recommended that this action be assigned to the Standard Track, and that the foregoing Memorandum of Law complies with the page limitations set forth in Local Rule 7.1(f).

        /s/ Scott S. Balber
        Scott S. Balber