**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| FORTRESS VALUE RECOVERY FUND I, LLC | ) ) ) | Case No. 1:11-CV-00200 |
| Plaintiff, | ) ) ) | JUDGE JAMES S. GWIN |
| v. | ) ) ) | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN |
| COLUMBUS COMPONENTS GROUP, LLC, et al. | ) ) ) | **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS HAWTHORN** |
| Defendants. | ) ) ) | **MANUFACTURING CORPORATION AND PATRICK JAMES** |

Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Opposition") is flawed in several key ways, and the deficiencies in the Complaint warrant dismissal of this action against Defendants, Hawthorn Manufacturing Corporation ("Hawthorn") and Patrick James ("James"). Plaintiff's use of additional documents that are not considered in the Complaint is inappropriate in response to the Motion to Dismiss of Defendants, Hawthorn and James ("Motion to Dismiss"). Contrary to Plaintiff's unsupported assertions, the Complaint does not adequately allege facts in support of Plaintiff's claims for relief. The conclusory allegations in the Complaint are not to be considered by the Court and the factual allegations do not give rise to a plausible claim for relief. In light of these deficiencies, the Court must dismiss all claims for relief asserted against Hawthorn and James.

**A. Additional Documentary Evidence Submitted by Plaintiff in Its Opposition Is Not Properly Considered by the Court.**

Several documents supplemented by Plaintiff in the Declaration of Scott S. Balber in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss (Doc. 22, "Declaration")

cannot be considered by the Court in these motion to dismiss proceedings.[1] In ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *McKinney v. Bayer Corp.*, No. 10-CV-224, 2010 WL 3834327 *4 (N.D. Ohio Sept. 30, 2010) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 924-25 (N.D. Ohio 2009)).

Exhibit A to the Declaration is a completely unrelated complaint filed in the Northern District of Ohio by a different plaintiff against some of the same defendants in the present action (the "Red Rock Action"). While the Court may take judicial notice of the complaint, this complaint cannot be considered as supporting an alter ego theory of liability against Defendants Hawthorn or James. *See Burwell v. American Edwards Laboratories*, 62 Ohio App.3d 73, 84, 574 N.E.2d 1094, 1101 (10th Dist. 1989) (refusing to admit evidence of a separate lawsuit because it does not tend to make more probable any facts alleged by plaintiff in the present action); *Eiben v. A. Epstein & Sons Int'l, Inc.*, 57 F.Supp.2d 607, 614 (N.D. Ill. 1999) (holding evidence of claims in a separate lawsuit are irrelevant and prejudicial to claims asserted in the case before the court); *Gibbs v. Air Canada*, 810 F.2d 1529, (11th Cir. 1987) (prohibiting allegations from a complaint to be used in a different claim because they are not evidence of

---

[1] It appears that Doc. 21, which is also captioned Declaration of Scott S. Balber in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss contained an incomplete set of the Exhibits thereto (A – C) and that, therefore, Plaintiff filed a second declaration (Doc. 22), although not titled as an amendment, that is identical in substance, but contains more exhibits (A – E).

liability). Plaintiff cannot supplement its inadequate complaint with allegations made in a completely different complaint.

Exhibit B to the Declaration purports to be a transcript of settlement proceedings in the Red Rock Action. Plaintiff requests that the Court consider this transcript as a supplement to its alter ego allegations, arguing that the Red Rock Action illustrates a "pattern of deception in which they utilize entities they control in order to defraud creditors." (Opposition p. 8-9.) Plaintiff implies that the transcript establishes that James was the alter ego of Red Rock and Hawthorn by agreeing to a settlement with the plaintiff in the Red Rock Action. (Id.) Despite the falsity of that argument, use of this settlement transcript is inappropriate here.

The use of a settlement offer or the fact of settlement cannot be used to infer liability. FED.R.EVID. 408; *Bridgeport Music, Inc. v. Justin Combs Publishing*, 507 F.3d 470, 480 (6th Cir. 2007). Federal Evidence Rule 408 provides:

> Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, …
>
> (1) furnishing or offering to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, …

FED. R. EVID. 408(a). The settlement proceedings in the Red Rock Action do not, and cannot, support a theory of alter ego liability against James or Hawthorn.[2] Plaintiff's use of this transcript is inappropriate.

---

[2] Plaintiff's contention as fn. 9 of its Opposition is completely unfounded as no evidence exists or was properly alleged that James assumed a debt of Red Rock. "[A] settlement offer or the fact of settlement negotiations is not direct evidence regarding the factual issues in a case." *Urseth v. City of Dayton*, 680 F.Supp. 1084, 1098 (S.D. Ohio 1987)

It is also improper for the Court to consider Exhibits D and E to the Declaration. These Exhibits are not central to the Plaintiff's claims and therefore should not be considered. *See e.g.* 11 James W. Moore, et al., MOORE'S FEDERAL PRACTICE § 56.30[4] (3d ed. 1998) (a document may be considered part of the pleadings when it is referred to in the complaint and central to the plaintiff's claim); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (considering documents that were central to the plaintiff's claims).

**B. Plaintiff's Attachment of the Amended and Restated Note Purchase Agreement, dated March 1, 2005, Defeats Plaintiff's Standing Argument.**

With respect to the issue of Plaintiff's lack of standing to bring this lawsuit, Plaintiff's Opposition Brief misses the mark completely, and Plaintiff fails to demonstrate that it has standing to bring this action. Plaintiff alleges that it "became Brantley's successor-in-interest under the agreements," which includes the Amended and Restated Note Purchase Agreement, dated March 1, 2005 (Exhibit A to the Complaint, "Note") and the Guarantees attached as Exhibits B and C to the Complaint. (Compl. ¶ 12.) Plaintiff alleges that upon Brantley's breach of a separate Senior Finance Agreement, Plaintiff was entitled to assume Brantley's rights and obligations under the Note and Guarantees. (Id.; Exhibit C to the Declaration.) Yet, the terms of the Note debase Plaintiff's position completely, and actually establish that Plaintiff lacks standing to bring its claims.

Section 3.5 of the Note, sets forth the conditions precedent to a transfer of the Note from the Purchaser [Brantley] to any other party, including Plaintiff. In relevant part, Section 3.5 states:

> The Company shall keep a register which shall provide for the registration of the Note and the registration of transfers of the Note (the "Note Register"). … No Note may be transferred unless such transfer is recorded in the Note Register, and the transferee thereof has assumed the Purchaser's rights and obligations hereunder. The holder of each Note shall notify the Company in writing at least

> three days in advance of any transfer or exchange of a Note. Within a reasonable time after such notice to the Company from the Purchaser of its intention to make such a transfer or exchange and without expense [] to such Purchaser, the Company shall:
>
> ***
>
> (c) issue in exchange therefore another Note or Notes as requested by the Purchaser, for the same aggregate principal amount, as of the date of such issuance, as the unpaid principal amount of the Note so surrendered, and having the same maturity and rate of interest, containing the same provisions and subject to the same terms and conditions as the Note so surrendered. Each new Note shall be made payable to such Person or Persons, or assigns, as the Purchaser holding such surrendered Note may designate, and such transfer or exchange shall be made in such a manner that no gain or loss of principal or interest shall result therefrom. The Company [Columbus Components Group, LLC] shall have no obligation hereunder or under any Note to any Person other than the Purchaser that is the registered holder of each such Note.

(Note, § 3.5.)[3] These conditions precedent were designed to prevent exactly what Plaintiff is attempting here – the filing of a lawsuit based on an agreement with someone who is not a party to the agreement.

Plaintiff's Complaint makes no allegation that these conditions precedent have been met. Plaintiff does not base its claim on a replacement Note naming Plaintiff as a party. Rather, Plaintiff bases its claim on the original Note between CCG and Brantley. The failure to allege facts that the Purchaser [Brantley] and Plaintiff fulfilled the conditions precedent in Section 3.5 is fatal to Plaintiff's standing argument and precludes Plaintiff from bring this claim.[4] The Exhibits in the Declaration do not save Plaintiff from this failure as none of the Exhibits, even if they are properly considered at this stage, show compliance with these conditions precedent.

---

[3] Rule 10 of the FRCP provides that "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c).

[4] Even if the Court considers the Exhibits attached to the Declaration, Plaintiff still has not alleged facts giving rise to standing.

### C. **Plaintiff's Conclusory Allegations Are Insufficient to Support Alter Ego Liability.**

Plaintiff argues that it "has sufficiently pled each element necessary to state a claim for James' and Hawthorn's alter ego liability." (Opposition p. 13.) However, Plaintiff must do more than simply plead each element. It must plead <u>facts</u> in support of each element, and those facts must allege a <u>plausible</u> claim for vicarious liability against James and Hawthorn. "The tenet that a court must accept as true all of the allegations contained in a complaint <u>is inapplicable to legal conclusions</u>. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) (emphasis added).

"Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Bd. of Trs. of the Plumbers, Pipefitters & Mech. Equip. Serv., Local Union 392 Pension Fund v. Airstream Mech.*, No. 1:08cv901, 2101 WL 3656036 *4 (S.D. Ohio Aug 11, 2010). Dismissal is proper when Complaint contains unsupported conclusory statements in Complaint that defendants failed to observe corporate formalities. *Flynn v. Greg Anthony Const. Co.*, No. 01-3391, 2003 WL 22598297 *9 (6th Cir. Nov, 7, 2003).

The unsupported conclusory allegations that Plaintiff makes are:

- "On information and belief, Hawthorn and James exercised such extensive control over CCG, CCG Holdings and PJ, that those entities effectively lacked any mind, will or existence of their own." (Compl. ¶ 23.)
- "On further information and belief, CCG, CCG Holdings and PJ were thus a mere façade for the operations of Hawthorn and James." (Id.)
- "On information and belief, none of CCG, CCG Holdings, PJ and Hawthorn observed corporate formalities or maintained separate books and records." (Compl. ¶ 27.)

These conclusory allegations cannot be considered by the Court in determining the Motion to Dismiss.

> **D.  The Facts in Plaintiff's Complaint Do Not Allege Plausible Claims for Relief Against Hawthorn or James.**

The factual allegations Plaintiff makes do not give rise to plausible claims for relief under either alter ego theory or unjust enrichment.  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twonbly*, 550 U.S. 544 at 570, 127 S.Ct. 1955 (2007).  The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.  The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Therefore, where a complaint pleads facts that are "merely consistent with" the defendant's liability, "it stops short of the line between possibility and plausibility of entitlement to relief."  *Id*. (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).  Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 1950.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Id*.  These pleading standards apply in all civil actions.  *Id*. at 1953.

> **1.  *Plaintiff's Allegations Do Not Plausibly Support the Alter Ego Element of Domination and Control over CCG, CCG Holdings and PJ.***

The facts alleged in the Complaint regarding alter ego, do not give rise to a plausible claim for relief.  Plaintiff must allege facts that give rise to the plausible determination that Hawthorn and James had such domination and control over the corporation that is so complete that the corporation has no separate mind, will, or existence of its own.  *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Co.*, 617 N.E.2d 1075, 1086 (1993).  Plaintiff asserts that Hawthorn

and James were able to assert control over the companies, because "James served as the Chairman of each CCG, CCG Holdings and PJ." (Compl. ¶ 24.) However, serving as the Chairman of the Board of Directors for multiple companies does not support a theory of liability that the Chairman is the alter ego of the companies. *Shea v. Bonutti Research, Inc.*, No. 2:10-cv-615, 2011 WL 53473, *7 (S.D. Ohio 2011).

Plaintiff alleges that "the illusory nature of the supposed distinction between James, Hawthorn, CCG, CCG Holdings and PJ is evidenced by, among other things, the fact that these entities shared management and employees." (Compl. ¶ 25.) It is not improper for multiple companies to have common management and employees. *See Clinical Components, Inc. v. Leffler Indus., Inc.*, No. 95CA0085, 1997 WL 28246, at *3 (Ohio Ct. App. 1997). Moreover, Plaintiff alleges one common officer between CCG, PJ and Hawthorn, Jay Schabel, and one common employee, Charles Schiavello, used by CCG and other unnamed entities owned by James. (Compl. ¶ 25.) Sharing one officer and one employee certainly does not provide a plausible basis for a finding of total domination and control over a collection of companies. *See Shea v. Bonutti Research, Inc.*, No. 2:10-cv-615, 2011 WL 53473, *7 (S.D. Ohio 2011).

Plaintiff alleges that CCG Holdings, PJ, and Hawthorn also all shared the same office address. (Compl. ¶ 26.) Yet, again, this fact, even if taken as true, is an insufficient basis to find the companies are alter egos. *Id.*

Finally, Plaintiff attempts to impose alter ego liability based on the allegation that "upon information and belief, CCG, CCG Holdings and PJ suffered from grossly inadequate capitalization, as evidenced by their failure to satisfy their undisputed payment obligations to Plaintiff." (Compl. ¶28.) The statement that the companies "suffered from grossly inadequate capitalization" is a conclusion of law supported only by the proposition that because CCG

defaulted on its (purported) Note obligations in 2009, that it was under-capitalized. Such a leap of logic does not provide a plausible basis to impose alter ego liability upon a shareholder of a company. If that were the case, all breaches of a contract due to a company's inability to pay would result in piercing the corporate veil, and no personal guarantees would ever be necessary. *See BHS & B Holdings LLC v. Bay Harbour Master Ltd.*, 420 B.R. 112, 136 (Bankr. S.D.N.Y. 2009) (holding such undercapitalization is insufficient to pierce the corporate veil, because otherwise "the veil of every insolvent subsidiary or failed start-up corporation could be pierced.").[5]

Plaintiff does not even allege inadequate capitalization at the time the obligation was made—in this case, when the Note was executed by CCG and Brantley. In fact, CCG made monthly payments on the Note for almost five years, from the time the Note was executed in December 2004 to the alleged default in 2009. (Compl. ¶¶ 11, 14.) It simply is not plausible that an alleged default on the Note in February 2009, after almost five years of monthly payments, could support the conclusion that CCG was inadequately capitalized in December 2004. This allegation simply cannot be the basis for alter ego liability.

### 2. *Plaintiff Fails to Adequately Plead Facts Supporting the Requisite Instrumentality Element of Its Alter Ego Claim.*

Even if this Court were to determine that the allegations give rise to a plausible claim that Hawthorn or James had the requisite domination and control over CCG, CCG Holdings and PJ such that these companies had no separate mind, will or existence of their own, Plaintiff still fails to allege an alter ego liability against Hawthorn or James. Ohio's alter ego law imposes an

---

[5] "The inquiry 'is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose such as avoiding the risks known to be attendant to a type of business.' When determining whether a subsidiary was adequately capitalized, courts focus on the initial capitalization: 'whether a corporate entity was or was not set up for financial failure.'" *Id*. (citations omitted).

instrumentality requirement – i.e., those controlling the companies must have used them as an instrumentality for fraud, illegal conduct or unlawful act. *Belvedere*, 617 N.E.2d at 1086. The domination or control is not sufficient for alter ego liability to be assessed. *Id.* Plaintiff fails to adequately plead the requisite "fraud, illegal act, or similarly unlawful act" on the part of Hawthorn or James sufficient to give rise to alter ego liability.

Plaintiff argues that it need not plead fraud with particularity if fraud is the basis for meeting the instrumentality element of alter ego liability. (Opposition, p. 16.) However, Plaintiff's contention is incorrect, as prevailing law in Ohio requires such pleading with particularity when fraud is the basis of alter ego liability. "When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to FED. R. CIV. P. 9(b)." *Southeast Texas Inns, Inc. v. Prime Hospital Corp.*, (462 F.3d. 666, 672 (6th Cir. 2006) (citing *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n. 10 (3d Cir. 2002)). As detailed in the Motion to Dismiss, Plaintiff's Complaint fails to allege with particularity any fraud by Hawthorn or James because it fails to allege the time, place and contents of the purported misrepresentations. *See Girgis v. Countrywide Home Loans, Inc.*, 733 F.Suppl2d 835, 843 (N.D. Ohio 2101) ("to satisfy Rule 9(b), plaintiffs must, at a minimum, 'allege the time, place and contents of the misrepresentations on which they relied.'").

Plaintiff argues that it adequately plead another form of improper conduct upon which its alter ego claim rests – an alleged violation of the Ohio Fraudulent Transfer Act ("OFTA"). (Opposition, pp. 17-18.) Plaintiff asserts that such a violation arose by Hawthorn and James "directing and receiving transfers of assets from CCG, CCG Holdings and/or PMJ, without returning to the companies equivalent value, while those companies were grossly undercapitalized." (Id.) Plaintiff claims that the transfers were in the form of monthly

management fees and a salary.  (Compl. ¶ 31).  Yet, these facts do not adequately allege a violation of the OFTA.

A claim for fraudulent transfer under OFTA exists when:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation <u>and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.</u>
>
> (B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, <u>the debtor was insolvent at that time</u>, and the insider had reasonable cause to believe that the debtor was insolvent.

Ohio Rev. Code § 1366.05.[6]  Plaintiff makes no allegation that CCG, CCG Holdings or PJ are insolvent or became insolvent as a result of the payment of the management fees or salary. Without such an allegation, Plaintiff fails to allege facts of a violation of OFTA sufficient to form the basis for alter ego liability.

Moreover, the payments Plaintiff complains of as being a violation of the OFTA was "tens of thousands of dollars" in the form of "management fees and salary from CCG." (Opposition, p. 19).  Plaintiff does not allege that the payment of the management fees and salary were not commiserate with market value or were improper.  Plaintiff merely protests that the payment of these amounts created a diversion of money "away from Plaintiff."  (Id.)  These payments do not give rise to level of fraud or illegal conduct that is required for the

---

[6] Plaintiff cites to the wrong code section as it does not have the ability to make a claim for the wrongful transfer under section 1366.04.

- 11 -

instrumentality prong of its alter ego claim.  Plaintiff's Complaint for alter ego liability upon Hawthorn and James must be dismissed.

Simply put, Plaintiff wants the Court to impose alter ego liability for an alleged breach of the Note by CCG and the alleged breaches of the guarantees by CCG Holding and PJ.  This simply is not permissible.  A greater wrong must be alleged.  It must be fraud, an illegal act or similarly unlawful act.  *See Dombrowski*, 895 N.E. 2d at 540-42.  Plaintiff's failure to allege facts that give rise to a plausible claim for alter ego liability on Hawthorn or James is fatal.  Accordingly, the Court must dismiss the First through Third Claims for Relief against Hawthorn and James.

### 3. *Plaintiff's Unjust Enrichment Allegations Do Not Rise to the Level of a Plausible Claim for Relief.*

Plaintiff similarly fails to allege a plausible claim of unjust enrichment against Hawthorn or James.  The gist of Plaintiff's claim for unjust enrichment against Hawthorn and James is that the Note for $6 million "enabled James and hawthorn to fraudulently obtain tens of thousands of dollars in management fees and salary from CCG," and that allowing James and Hawthorn to keep this tens of thousands of dollars would be unjust.  (Opposition p. 19.)  Plaintiff's argument fails for two reasons.

Plaintiff complains that Hawthorn's and James' alleged retention of the management fees that CCG paid to PJ and the salary that CCG paid to James constitutes unjust enrichment.  Plaintiff does not allege that it paid the management fees to PJ and it does not allege that it paid James' salary.  It is axiomatic that the benefit received and retained by the defendant must arise directly from a benefit conferred by the plaintiff.  *See Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 286, 834 N.E.2d 791, 799 (2005) (holding the purpose of such claims "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the

benefit he has conferred on the defendant."). Without Plaintiff having conferred a direct benefit upon James and Hawthorn, it cannot maintain its unjust enrichment claim. As such, the Fourth Claim for Relief must be dismissed.

### E. Conclusion

Based on the law and arguments presented in their Motion to Dismiss and above, Hawthorn and James respectfully request the Court dismiss the Complaint against them in its entirety. Plaintiff fails to allege facts showing that it complied with all conditions precedent to taking an assignment of Brantley's rights and obligations under the Note. Without such compliance, Plaintiff clearly does not have standing to pursue its claims for relief.

Moreover, Plaintiff fails to allege facts that give rise to a plausible claim for alter ego liability against Hawthorn or James. The conclusory allegations Plaintiff makes must be disregarded by the Court. The factual allegations fail to state a plausible claim that Hawthorn or James exerted such domination and control over CCG, CCG Holdings and PJ that those companies had no separate mind, will, or existence of their own. Plaintiff also fails to allege sufficient plausible facts that Hawthorn or James utilized CCG, CCG Holdings and PJ to engage in fraud, illegal acts or other unlawful act. Accordingly, Plaintiff fails to satisfy the *Twombly/Iqbal* pleading requirements, and the Court must dismiss the Complaint as against Hawthorn and James.

Respectfully submitted,

/s/ Pete C. Elliott
PETE C. ELLIOTT (0002235)
TAMARA L. KAREL (0078942)
JULIA M. LEO (0086997)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
Telephone: 216-363-4500
Facsimile: 216-363-4588
Email: pelliott@beneschlaw.com
tkarel@beneschlaw.com
jleo@beneschlaw.com
*Attorneys for Defendants Hawthorn Manufacturing Corporation and Patrick James*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2011, a copy of the foregoing Reply Brief in Support of Motion to Dismiss of Defendants Hawthorn Manufacturing Corporation and Patrick James was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Pete C. Elliott
Pete C. Elliott

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(f), I hereby certify that: (i) the Judge recommends that this case be assigned to a standard case management track; and (ii) the foregoing memorandum adheres to the page limitations set forth in L.R. 7.1(f) with respect to standard track cases.

/s/ Pete C. Elliott
Pete C. Elliott