UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

FORTRESS VALUE RECOVERY
FUND I, LLC

        Plaintiff,

vs.

COLUMBUS COMPONENTS GROUP
LLC, *et al.,*

        Defendants.

------------------------------------------------------

CASE NO. 1:11-CV-00200

OPINION & ORDER
[Resolving Doc. Nos. 16, 17]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this action, Defendants Hawthorn Manufacturing Corporation ("Hawthorn Manufacturing"), Patrick James, Columbus Components Group, LLC ("Columbus Components"), CCG Holdings, LLC ("CCG Holdings"), and PJ Management Group, LLC ("PJ Management") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss for lack of standing and failure to state a claim upon which relief can be granted. [Doc. 16; Doc. 17.] Plaintiff Fortress Value Recovery Fund I, LLC ("Fortress Value") opposes. [Doc. 20.] The Defendants replied. [Doc. 29; Doc. 30.]

For the following reasons, the Court **DENIES** the Defendants' motions to dismiss.

## I. Background

This lawsuit stems from the alleged breach of an Amended and Restated Note Purchase Agreement (the "Amended Note Purchase Agreement."). The Plaintiff alleges that on December 9,

Case No. 1:11-CV-00200
Gwin, J.

2004, its predecessor in interest, Brantley Mezzanine Finance, LLC ("Brantley Mezzanine Finance") and Columbus Components executed an Amended Note Purchase Agreement, under which Brantley Mezzanine Finance loaned Columbus Components $6 million. [Doc. 1 at ¶¶ 1, 11.] The Plaintiffs also allege that on the same date, CCG Holdings and PJ Management each entered into a separate guaranty agreement with Brantley Mezzanine Finance, both of which guaranteed the obligations of Columbus Components under the Amendment Note Purchase Agreement. [Id. at ¶ 20.] According to the Plaintiff, CCG Holdings is the owner of Columbus Components and PJ Management provides management services to Columbus Components in return for a monthly fee. [Id. at ¶ 18.]

Plaintiff Fortress Value says that on September 17, 2004, it extended a loan to Brantley Mezzanine Finance pursuant to a senior finance agreement. [Id. at ¶ 12.] At that time, the Plaintiff was known as D.B. Zwirn Special Opportunities Fund L.P. [Doc. 20 at 6.][1/] In early 2007, Brantley defaulted under that loan and the Plaintiff says that it exercised its right under the senior finance agreement to assume all of Brantley's right, title, and interest in the Amended Note Purchase Agreement with Columbus Components. [Id. at ¶ 12.]

Fortress Value claims that in February 2009, Columbus Components ceased making its required monthly interest payments under the Amended Note Purchase Agreement. [Id. at ¶ 14.] Fortress Value says that it notified Columbus Components of the default on April 1, 2009, which was not cured, and further says that on August 13, 2009, it declared all obligations under the Amended Note Purchase Agreement immediately due. [Id. at ¶ 14.] Columbus Components made one *de minimus* payment to the Plaintiff in December 2009, but has made no other payments since. [Id. at ¶ 14.] The Plaintiff also alleges that it has received no payment from either CCG Holdings

---

[1/] In 2009, it converted to a limited liability company and changed its name to Fortress Value. [Doc. 20 at 6.]

Case No. 1:11-CV-00200
Gwin, J.

or PJ Management under the related guaranty agreements. [*Id.* ¶ 21.] The Plaintiff claims, as of the date of the filing of the complaint, that Columbus Components owes $12,460,33.34 under the Amended Note Purchase Agreement, a figure that includes the principal, accrued interest, and contractually allowed penalties. [*Id.* at ¶ 14; Doc. 20 at 7.]

The Plaintiff also says that Defendant Patrick James is the sole or controlling owner of Columbus Components, CCG Holdings, PJ Management, and Hawthorn Manufacturing. [Doc. 1 at ¶ 22.] The Plaintiff alleges that James and Hawthorn Manufacturing exercised complete control and over the daily operations of all of the above companies and that these companies were merely facades for James. [*Id.* ¶¶ 23-35; Doc. 20 at 7.] The Plaintiff says that Hawthorn Manufacturing and James were able to assert this control because James held a majority ownership interest in all of the Defendant companies and because James served as chairman of each. [Doc. 1 at ¶ 24.] Plaintiff Fortress Value further says that all of the Defendant companies share employees and management, do not have separate books and records, have the same address in Solon, Ohio, and are grossly undercapitalized. [*Id.* at ¶¶ 25-28.] Fortress Value claims that Defendant James created this web of companies to transfer funds from Columbus Components to management companies, such as Hawthorn Manufacturing and CCG Holdings, in an attempt to defraud Columbus Component's creditors. [*Id.* at ¶ 29.] As part of this scheme, the Plaintiff says that James and Hawthorn Manufacturing falsely represented the condition of Columbus Components to creditors. [*Id.* at ¶¶ 30, 32.]

On January 27, 2011, Plaintiff Fortress Value filed the current action. [*Id.*] The Court has proper subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the action involves citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §

Case No. 1:11-CV-00200
Gwin, J.

1332. The Plaintiff now asserts four causes of action, specifically: (1) breach of the Amended Note Purchase Agreement against Defendants Columbus Components, Hawthorn Manufacturing, and Patrick James; (2) breach of the CCG Holdings guaranty agreement against Defendants CCG Holdings, Hawthorn Manufacturing, and Patrick James; (3) breach of the PJ Management guaranty agreement against Defendants PJ Management, Hawthorn Manufacturing, and Patrick James; and (4) unjust enrichment against Defendants Hawthorn Manufacturing and Patrick James. [Doc. 1.]

The Defendants move to dismiss this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Doc. 16; Doc. 17.] All of the Defendants, first, move to dismiss this action in its entirety, saying that the Plaintiff fails to show it has standing because it failed to provide "documentation of its right, title, and interest to bring this action upon the loans at issue." [Doc. 16; Doc. 17-1 at 1.] Second, Defendants Hawthorn Manufacturing and Patrick James move to dismiss for failure to state a claim, arguing that the Plaintiff fails to plead sufficient facts to support an alter ego theory of liability. [Doc. 16 at 9-18.]

**II. Legal Standard**

A court may grant a motion to dismiss only when "it appears beyond doubt" that the plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires

Case No. 1:11-CV-00200
Gwin, J.

that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1949 (citations removed). In addition, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R . Civ. P. 9(b).

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true. *Iqbal*, 129 S. Ct. at 1949-51.

### III. Analysis

*III.A Standing to Sue*

The Defendants first argue that Plaintiff Fortress Value lacks proper standing to bring the current action. Specifically, the Defendants say that the Plaintiff has failed to proffer any evidence indicating that it is a successor-in-interest to Brantley Mezzanine Finance's rights under the Amended Note Purchase Agreement or the related guaranties. [Doc. 16 at 6; Doc. 17-1 at 2.] The Defendants further say that since the Plaintiff has failed to show that it possesses an ownership interest in the Amended Note Purchase Agreement that this Court lacks proper jurisdiction under Article III to hear this action. [Doc. 17-1 at 3; Doc. 29 at 2-4.] The Plaintiff replies that it is unnecessary at this stage to prove their ownership interest in the Amended Note Purchase Agreement because it adequately alleges such ownership, and alternatively, attaches the Amended Note Purchase Agreement and the senior finance agreement with Brantley Mezzanine Finance to prove an ownership interest in the disputed Note. [Doc. 20 at 10-12; Doc. 22-1-11.]

Case No. 1:11-CV-00200
Gwin, J.

Standing is "the threshold question in every federal case." *Warth v. Seldin*, 244 U.S. 490, 498 (1975). "To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)).

As an exhibit to their complaint the Plaintiff attaches the Amended Note Purchase Agreement, which lists Brantley as the holder of the note, as well as the related guaranty agreements. [Doc. 1-1; Doc. 1-2; Doc. 1-3; Doc. 1-4; Doc. 1-5.] Additionally, as part of their opposition, the Plaintiff attaches the senior financing agreement with Brantley, which purports to transfer interest in the Amended Note Purchase Agreement to Zwirn Special Opportunities Fund L.P. [Doc. 22-3 at 2.] In determining if the Plaintiff has standing, the Court may validly look to exhibits beyond the complaint. *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). After reviewing the Plaintiff's submissions, the Court finds that these documents evidence a sufficient ownership interest in the Amended Purchase Agreement to support proper standing. The senior financing agreement plainly lists Zwirn as a party to the agreement and also lists the Amended Note Purchase Agreement with Columbus Components as collateral. [Doc. 22-3 at 2-8; Doc. 22-10 at 5; Doc. 22-11 at 2.] Because Fortress was formerly known as Zwirn, the Court finds that the submission of the senior financing agreement is sufficient to establish standing.[2][3] The Court,

---

[2] The Plaintiff also alleges that Columbus Components made payment to Zwirn/Fortress Value for approximately eighteen months after it assumed Brantley's rights under the Amended Note Purchase Agreement (from late 2007 through February 2009). [Doc. 20 at 12.] If proven true, this behavior strongly suggests that Fortress Value possesses proper standing to enforce the Amended Note Purchase Agreement and makes the Defendants' standing

-6-

Case No. 1:11-CV-00200
Gwin, J.

therefore, **DENIES** the Defendants' motions to dismiss on this grounds.

*III.B Piercing the Corporate Veil*

Defendants Hawthorn Manufacturing and Patrick James also move to dismiss all claims asserted against them, saying that the Plaintiff fails to plead sufficient facts to support an alter ego theory of liability. [Doc. 16 at 9-18.] With its complaint, the Plaintiff alleges that Defendant Patrick James exercised complete control over Columbus Components, CCG Holdings, PJ Management, and Hawthorn Manufacturing and that he used this web of companies to transfer funds from Columbus Components in an attempt to defraud creditors. [Doc. 1 at ¶¶ 22-37.] The Plaintiff further says that all of these companies were the alter ego of Defendant James and the Plaintiff now seeks to pierce the corporate veils of Columbus Components, CCG Holdings, and PJ Management to reach both Defendants Patrick James and Hawthorn Manufacturing. [*Id.* at ¶¶ 36-37.]

It is a general principle of corporate law that a parent corporation or owner is not liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). The Sixth Circuit, however, has allowed for the piercing of the corporate veil "in so-called double-breasted operations [where] two or more coexisting [companies] are in fact one business, separated only in form." *UAW v. Aguirre,* 410 F.3d 297, 301 (6th Cir. 2005). Thus, under Ohio law, "the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the

---

argument look rather disingenuous.

³/ The Defendants also argue that Section 3.5 of the Amended Note Purchase Agreement precludes Fortress Value from suing. [Doc. 30 at 4-5.] This argument loses. First, it is unnecessary for Fortress Value to specifically allege in the complaint that it registered the transfer, as is required under Section 3.5. Rather, merely alleging that it has proper standing is sufficient. Second, the Defendants' argument regarding mandatory issuance of a new Note misconstrues the plain language of the Note. Section 3.5(c) of the Note does not require that Fortress Value acquire a new Note listing it as owner (as the Defendants argue). Rather, that Section plainly states that Defendant Columbia Components must issue a new Note in exchange for the original, but only if the purchaser so requests it. [Doc. 1-1 at 24.]

Case No. 1:11-CV-00200
Gwin, J.

corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993)).[4]

The first prong of the so-called "*Dombroski-Belvedere*" test for piercing the corporate veil – whether the corporation had a "separate mind, will, or existence of its own" – is a determination of whether the corporation is merely the alter ego of its owner. *See Taylor Steel*, 417 F.3d at 605. Under this prong, a plaintiff must show that " the individual and the corporation are fundamentally indistinguishable." *Id.* In determining whether a corporation possesses its own identity or is merely an alter ego of its owner, Ohio courts consider factors such as whether (1) corporate formalities are observed, (2) whether corporate records are kept, and (3) whether the corporation is financially independent. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 363 (6th Cir. 2008). The Sixth Circuit has also instructed courts to consider several additional factors, including, "(1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation." *Id.*

The Plaintiff makes a number of allegations in the complaint relevant to the first prong of the

---

[4] When the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of substantive law is governed by the law of the state in which the federal court sits. *Corrigan v. United States Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

-8-

Case No. 1:11-CV-00200
Gwin, J.

test for piercing the corporate veil. If any of these allegations are proven true after discovery, they would weigh in favor of finding that the various Defendant corporations are merely the alter ego of Defendants Patrick James and Hawthorn Manufacturing. First, the Plaintiff alleges that the various corporate Defendants did not observe proper corporate formalities or keep separate books and records. [Doc. 1 at ¶ 27.] Similarly, the Plaintiff alleges that all of these companies shared management and employees. For example, Plaintiff Fortress Value claims that Jay Schabel served as President of Columbus Components and PJ Management and also acted as Chief Executive Officer of Hawthorn Manufacturing and that Defendant Patrick James acted as Chairman of all of the Defendant corporations. [*Id.* at ¶¶ 24-25.] Fortress Value also says that CCG Holdings, PJ Management, and Hawthorn Manufacturing maintain the same address in Solon, Ohio. [*Id.* at ¶ 26.] Also relevant, the Plaintiff says that Defendant James exercised complete decision making authority within each these corporate entities. [*Id.* at ¶ 23.] Finally, the Plaintiff alleges that none of the companies are adequately capitalized and that they are all financially dependent upon each other. [*Id.* at ¶ 28.]

Although these allegations, to some degree, read like a recitation of various elements courts are supposed to analyze when deciding if a corporation is an alter ego of its owner, for purposes of a motion to dismiss, they are sufficient to carry the Plaintiff's pleading burden. If proven true, these allegations would satisfy the first element of the Ohio test for piercing the corporate veil, particularly since the Plaintiff alleges that the various corporate Defendants possessed no independent existence of their own. *See, e.g.*, *Wachovia Bank, N.A., v. Zomax, Inc.*, 2009 WL 3698443, at *6-7 (S.D. Ohio, Nov. 3, 2009) (denying motion to dismiss where similar allegations were made); *Kelley v. McCommas*, 2007 WL 2713870, at *2-6 (S.D. Ohio Sept. 17, 2007). Nonetheless, the Court notes

Case No. 1:11-CV-00200
Gwin, J.

that the Plaintiff's burden of proving at summary judgment that the Defendant corporations are merely an alter ego of their owners is a different showing. *See, e.g.*, *Transition Healthcare Assocs. v. Tri-State Health Investors, LLC*, 306 F. App'x 273, 281-82 (6th Cir. 2009) (affirming granting of summary judgment); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724-726 (6th Cir. 2007) (same).

Having concluded that the Plaintiff's allegations satisfy the first prong of test for piercing the corporate veil, the Court will now consider the second prong *Dombroski-Belvedere* test – whether "control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act." *Taylor Steel*, 417 F.3d at 605. This prong is normally interpreted to mean a "harmful, unjust, unfair, inequitable or wrongful act rather than solely a criminal one." *Id.* at 608. The Plaintiff's allegations also satisfy this prong of the three-part test.

Fortress Value alleges that Defendants James and Hawthorn Manufacturing used these various corporations as shells as a means of fraudulently conveying property and otherwise perpetrating fraud on creditors. The Plaintiff says that James used the corporations to transfer funds from Columbia Components, leaving that corporation unable to meet liabilities, and that Columbus Components purposely misrepresented its financial condition and whether the relevant loan was adequately secured. [Doc. 1 at ¶¶ 29-35.] These allegations, if proven true, would support a claim of fraud and would satisfy the second prong of the test for piercing the corporate veil. *See Ruffing v. Masterbuilt Tool & Die, LLC*, 2009 WL 185950, at *14-17 (N.D. Ohio, Jan. 23, 2009) (holding that an allegation of fraud is sufficient to meet the second prong of this test and that it is unnecessary to also allege a separate claim of recovery under a fraud theory). Further, the conduct alleged here would also likely constitute a violation of the Ohio Fraudulent Transfer Act, which regulates the receiving of assets without the return of equivalent value in undercapitalized companies, a violation

-10-

Case No. 1:11-CV-00200
Gwin, J.

of which can satisfy the second prong of the *Dombroski-Belvedere* test. *See* O.R.C. §§ 1336.01-11; *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 816344, at *8-11 (N.D. Ohio Mar. 4, 2010) (holding that a violation of the Fraudulent Transfer Act is generally a sufficient predicate act under the second element of the test for piercing the corporate veil).

The Plaintiff also meets the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which applies to allegations of fraud made in support of an attempt to pierce the corporate veil. *Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006). Rule 9(b) generally requires a plaintiff to plead the specific "time, place, and content of the alleged misrepresentation on which she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). Although a close determination, the Court finds that the Plaintiff's allegations of fraud are sufficient because they allege the time, nature, fraudulent intent, the overall scheme, and the injury that resulted from the fraud. Moreover, the Court finds that it is unnecessary to closely consider this point, because the Plaintiff alleges conduct that would violate Section 1336.04 of the Ohio Fraudulent Transfer Act, which is not subject to the heightened pleading requirements of Rule 9(b). *Van-American Ins. Co. v. Schiappa, et al.*, 191 F.R.D. 537, 542 (S.D. Ohio 2000) (holding that claims of fraudulent conveyance and inadequate capitalization under O.R.C. § 1336.04, brought in a piercing the corporate veil context, are not subject to Rule 9(b)).

Having found that the Plaintiff pleads allegations satisfying the first two prongs *Dombroski-Belvedere* test for piercing the corporate veil, the Court will now consider the third prong – whether injury or unjust loss resulted to the plaintiff from the owner's control of the company and wrongful conduct. The Plaintiff alleges that it has been unable to collect upon the Amended Note Purchase

Case No. 1:11-CV-00200
Gwin, J.

Agreement due to the Defendants' conduct, which Plaintiffs say has caused it at least $6 million damages. [Doc. 1 at ¶¶ 36, 68.] This allegation is sufficient and the Court finds that the third prong of the test is met.

Because the Plaintiff pleads sufficient facts, that if proven true, would allow for the corporate veil to be pierced as to both Defendants James and Hawthorn Manufacturing, the Court **DENIES** the Defendants' motion to dismiss on this grounds. Although it is rare that piercing of the corporate veil is actually permitted, Fortress Value has alleged sufficient facts to permit discovery on this theory of recovery.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Defendants' various motions to dismiss.

IT IS SO ORDERED.


Dated: March 28, 2011            s/    *James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE